Sequential tables. Good morning, my name is Richard Wooster, Mann Johnson Wooster, Tacoma, Washington, and I'm here representing Roger Atkins and John Peel in this matter. I'd like to reserve three minutes for rebuttal. This case involves to what extent is the Labor Grant Relations Act surrendered to the collective The individual right to force society's established standards for workplace behavior and seek redress for individual harm to the employee. Modern union organization exists primarily for the union organization. The relationship between the union and the employer subjugates individual workers to the status of dues, pay, and human capital whose rights are frequently overlooked when it is inexpensive or inconvenient or subordinated to the collective interest of all the employees in the bargaining unit. Wrongful discharge cases vindicate the public interest when the employer acts contrary to fundamental public policy and is called to task for that breach of acceptable behavior by the victimized employee. The individual's vigilance toward infringements upon his own rights is generally keener than that of the collective or a government agency. This court should uphold the principle that the rights to be free from wrongful dismissal in violation of Washington State public policy is an inalienable individual right that is not extinguished by the collective bargaining agreement. And the court should preserve the rule that oversight in matters of public importance remain with the court and are not divested by the process of the collective bargaining agreement. Let me see if I can understand this correctly in the context of your opening. These individuals were terminated, correct? That is correct. And the reason for their termination had to do with claimed filling out of the overtime and their pay records, correct? That was what the employer asserted, and the employee's position was that they were asserting their rights under the Washington Act. Correct. I mean, there was a dispute. They felt that given the work that they had done, that those were appropriate entries to be made. But when that went up on appeal, their termination was reversed. Isn't that correct? Well, that's correct. So in other words, the termination was found to have been wrongful and therefore shouldn't have happened. That's correct. There was found that the employer lacked just cause for termination, and rather than an appeal, it was in the grievance arbitration. I guess it would be grievance arbitration appeal. And it was in that process. It actually involves three layers. They were not awarded bad pay. They had concluded that your clients had behaved badly. Well. The judge said, I think they said, did not behave well. Did not behave well. I think that's exactly what the arbitrator said. However, you have to look at it in view of the context in which the case was presented in arbitration by the union. The union made a tactical decision, whether it was for the benefit of Mr. Atkins and Mr. Peel or for the benefit of the union, that they would present no evidence on the employer's case. The employer presented their case that Mr. Atkins and Mr. Peel had engaged in terminable behavior, and the union rested at the end of the employer's case, never put any evidence on whatsoever, never allowed Mr. Atkins and Mr. Peel an opportunity to go forward and tell their side of the story. Just to put it in, we're trying to get the procedure straight. So they won half or most of the arbitration appeal. The termination was not for just cause. And they were reinstated. And they were reinstated, but they didn't get any back pay or other money. Right. So leaving aside now the other lawsuit which was filed, the lawsuit you've now filed that's on appeal is basically for the same termination that was earning on short arbitration. Is that correct? That is correct, but it is on a different legal theory. It is that they were terminated in violation of the public policy of the state of Washington that employees should not be retaliated against for opposing employer practices which paid substandard wages. You're a lawyer. You know that customarily if you bring a claim and you lose, you're not allowed to bring the same claim again with a different legal theory. You bring it all at the same time. Why should that apply here? Well, it shouldn't apply here at least as it relates to the collective bargaining agreement because the arbitrator had no authority to hear Mr. Atkins and Mr. Peel's public policy claim. Now that, okay. That's his. Do you want to wait just a minute? Let's just say that we agree with you on that point. That the arbitrator, because of their constrained authority, can't make a judgment on a public policy claim. And then you came to the district court and then on up to this court. But isn't the question here that between the term the arbitration finished and you filed your new suit, there was this intervening suit and in that suit there was a release of claims. Isn't that really what makes this case different than a typical case where we would be deciding whether or not there's public policy jurisdiction? Well, it's a little bit more muddled than that. Okay. With regard to that, first the case is in federal district court under removal, under the Labor Management Relations Act 301 preemption provisions. And so in order to reach the question of whether or not the release knocks this claim out, first the court has to have jurisdiction. If the court has jurisdiction, then I suppose they could reach the pendant issue of is the claim knocked out by the language of the release. And I would submit that the language of the release is specifically limited by the trial counsel who would handle the matter below by referring it to only the wage and hour claims. And the case authority is set forth in the brief that parties can release limited aspects of their claim. Okay. But here's the language. This is where I get stuck. They have this litigation over overtime and work hours. But here's the release they say. All claims, liabilities, and obligations which she or he has or which might have arisen out of or in connection with plaintiff's employment have cracks there that are based on state or federal law, including but not limited to, and then they go on and tell you some things. So it's all claims. Including a specific reference to the Washington statute. Statute. But it's all claims that might have arisen out of their employment. And it included all claims up to that point that have been or could have been brought to negative employment. So the question is why wouldn't that? And that's not a typical release in litigation. Not everybody signs them. But why wouldn't that be a release of all claims? Whether they have a policy or not. Okay. The reason why it is not a release of all of the claims is that language appears in the language under the paragraph titled no admission of fault or liability. And under the doctrine of sui generis. I think she was reading from a paragraph. I was following it. It begins titled release and discharge. Am I looking at the wrong document? That's where I was as well. Release and discharge. Which is paragraph number one of the agreement. I think we may be on different documents. I'm looking at something that's identified as excessive record page 73 title settlement agreement. And on the bottom of that page is a paragraph. Roman one release and discharge. Release and discharge. 73. The language he was reading came from page 74. Well, that language, that language is further modified by the statement as you go on. So it's the same document. It is the same document. Yes. It is modified by the statement. Related to wages or hours of work. Where does it say that? It says. It says including but not limited to. And so it's not. It's not restricted by. In other words. It says all claims arising out of no employment, including but not limited to. And then it lists a bunch of statutes. And it also lists the DL, Department of Labor and Industries, related to wages or hours of work. Including without limitation. And then it talks about the various arrangements that drivers have in terms of breaks and that sort of thing. So unless we were to read that language as limiting the release of all claims, which it doesn't seem to. I'm having trouble understanding why this isn't a release of all claims. The language that it is related to wages and hours of work. Which includes claims for unpaid wages, overtime, and all of those other issues. Which were reasonably related to the Washington Minimum Wage Act overtime requirement. So that's dealing solely with the issue of the mispayment of wages. Well, that can't be right. And look at it again. Because earlier in the statute it makes reference to the things other than the kind of. You're reading this narrowing portion after a language before Washington's Department of Labor and Industries. But earlier it uses the very broad in connection with employment. It makes reference, for example, to the federal statute. So I don't know that you can take. And I'm pretty confident that you can't take this language that you're reading here later related to. And act as if it modifies the whole paragraph. It doesn't make any sense that way, does it? I believe that it does. I believe that it clearly indicates when you look at the text of that. And dealing with the release earlier in the document. Where it says. If you wanted to say that. I mean, if you wanted to say you are. Here's what you weigh. You would weigh the release. Anything to do with wages or hours of work. Including such and such. But unfortunately it doesn't say that. It says in two places. It says that you release. Any claim. Any and all claims. Under federal and state law. And then if we move to the language you referenced earlier. At the end of the agreement it says. Grant fully understands the terms of the settlement agreement. And voluntarily accepts then a full and final settlement of the lawsuit. And any claims which could have been brought up in public. So. Both of those say any claims. But the primary language dealing with the operation of the release. Indicates that it is related to wages or hours of work. Let me ask you this. What does this mean to you? These words. Including but not limited to. What do you think that means? It means it is including. All claims. That are related to. Hours. First you've got to go to including. Any and all claims liabilities. Or obligations. He has which might have arisen out of. Or in connection with plaintiffs employment. Whether based on state or federal common law. Including but not limited to. The common law. Statute. Washington minimum wage act. Related to wages or hours of work. We're trying to limit the draft to release it was limited to wages. Or hours of work. Why would a phrase like. Might have arisen out of or in connection with plaintiffs employment at cracks are. Including but not limited to. I mean the modifier the descriptor limited to wages would never come at the end of that. It have to come at the beginning. What comes at the beginning is releasing everything having to do with my employment. Isn't that how it's ordinarily read. Well again I go back to the introductory language where the parties desire to enter into the settlement agreement. For any and all claims. Which have or might have been brought against cracks are regarding alleged unpaid wages and or overtime so it is. At the beginning. This is on page 73 it's recited at page 24 of my brief. And it is paragraph C of the recitals. And so the recitals indicates that it is. Regarding unpaid wages and or overtime occurring as a result of the plaintiff's employment during the dates alleged. Well that was a great. Right. Yes. OK. But isn't it. Practicing for a while. Isn't it typical. In. Settling lawsuits. In order to buy their piece. Settling party that is the party that is going to hang somebody or do something. Normally. Doesn't want to have to come back to court. At some point in time. I have to deal with the same parties again. Having to do with peripheral issues. Even issues that they may not be aware of. And so while in the settlement agreement. The specific litigation may be highlighted. In this settlement agreement. It would appear. The language which Judge Clifton and Judge McKeown have read to you a number of times. That they intended a global settlement. Of all issues going in and out. When they use the language. That says. But not limited to. Which is precisely what Judge McKeown. Is asking. They were intended to basically buy their piece were they not. That may have been the intent of Fraxair. But the intent of the other parties. They signed it. They signed this document. They signed it. Even though they were represented by counsel. They weren't by themselves. Walking around there. No they were represented by different counsel. In the execution of the settlement document. Were they represented. Does it reflect whether. In the union grievance. They were represented. As counsel. They were represented by counsel. For the union. In the. Union grievance. Was that a separate counsel. Than the person who represented them. In. The larger lawsuit. Over. To be honest. I mean. What's happened. I think it's unfortunate. To the extent. That your client. Thought that. They still have. A case. They signed. With advice of counsel. They signed this release agreement. So. Our charges. For the court. Is to determine. The legal. Effect. Of that. And it may be that. They hoped. Obviously they wouldn't have filed their. Third lawsuit. If they thought they. Didn't have one. I mean I don't think they would have. You know. Done that. If they honestly didn't believe they had one. The question then becomes. Having filed a third lawsuit. Which is. Over the same subject. As the first lawsuit. But with. As you pointed out. A different. Moniker of public policy. And different remedies. And different remedies. That they would get. In time before. State court. Well again. That moved. Under the. Various statutes. I guess. The question we have. Is whether this release. If they're probably in federal court. Under removal. Then. Was it. A proper interpretation. The one. The one thing that you didn't respond to. In that regard is. You addressed the word. Including. Various wage and hour claims. But that phrase actually. Has something that's very. As you know. Typical in release agreements. It's including. But not limited to. And. Would you agree. That that typically means. That. The listing. Of specific items. Is not the universe. Of what's released. Is not the universe. Of what the general release language. Attaches to. I would agree that that is correct. However. I don't believe. That the language. Can be read. Without the specific. Language. At the end. That discusses. That it is related to. All claims. Related to wages. Or hours of work. And the language. In terms of the release. That they were directed. To issue. In the underlying. Court. Was also a release. As to the claims. Of the. Wages. And hours. It was the release agreement. Called for them to issue. A very limited. Release. Or stipulated order of dismissal. With prejudice. Of the underlying action. Related to wages. And hours. Were like. They could have just dismissed. The action with prejudice. And if. If the settlement was intended. To do more than. No more than. Dispose of the. Previous litigation. That would have ended. It wouldn't. Mean it. Sometimes. You don't have a separate release agreement. You simply dismiss. The pending action. With prejudice. That extinguishes. The claim that was. Brought there. But it doesn't. Extinguish other claims. That might exist. In most cases. But here they signed a separate. Release agreement. That had broader language. And that's. That's really the problem. I've had trying to figure out. Why it is. Something should be carved out. In the face of. Of this. Terminology. In the settlement agreement. What's so unique. Or different. About the claim. They're trying to bring now. That it shouldn't be covered here. Well. There's nothing unique. Or different. About the claim. That they're bringing now. But that it is not. Related to. Wages. And hours. Of work. It's a retaliatory. Discharge case. And that the release. In the context. Of the dealings. Of the parties. The release. Is limited. To. Those wage. And hour. Claims. Which were brought. By Mr. Atkin. Mr. Peel. And several other. Employees. As reflected. In the release document. You have. Kind of overextended. Your time. But I'll give you some time. For rebuttals. I'll go to the next slide. Good morning. Your honors. May it please the court. My name is Catherine Morissette. And I represent Appellant Practicer, Inc. The relevant issue. In this case. Is not what Mr. Atkins. And Mr. Peel. Might have. Could have. Or should have. Alleged. In their complaint. Or might have. Could have. Or should have. Signed. In the settlement agreement. First off. We want to look at their actual. Factual allegations. In the complaint. And the actual. Claims. That they alleged. In the complaint. Plaintiffs have said. That they. Are bringing their claims. Based on a different. Legal. Theory. At essence. Their claims. Are for unjust termination. And if we look. At the complaint. In this case. We see. That they alleged. Breach of the union contract. Specifically. They referred. To the union contract. Over five times. In the allegations. In their complaint. The complaints. Found at. Excerpt of record. Page two. Paragraphs. Eleven. Twelve. Thirteen. Fourteen. And fifteen. Of that complaint. All refer. To a breach. In terms of condition. Of the union contract. These. On their face. Are claims. That arise. Under section 301. Of the Labor Management. Relations Act. It's for this reason. That. Quacks there. Remove the case. To federal court. Plaintiffs. Specifically. Alleged. That. They. Were seeking. To enforce. Their union contract. Rights. In the complaint. They titled their claim. Claim for wrongful termination. Breach of the employment. Contract. We're here because. They're. Taking a stab. At post removal. Artful pleading. To come up with. A breach. Of employment. Policy. Claim. That also survives. Preemption. Even. If the court. Allows plaintiffs. To. Abandon. Their. Union contract. Claims. Resolving. Whether their termination. Violated public policy. Is also. Going to depend. On interpretation. Of the union contract. The terms. Of the union contract. Are inextricably. Intertwined. With any determination. Of plaintiffs. Whether plaintiffs. Termination. Was justified. In this case. We're not just going to look. To the CBA. To figure out. A rate of pay. For purposes. Of calculating. Damages. We're going to have to look. To the CBA. To figure out. What various terms. And whether. In fact. As plaintiffs. Have. Alleged. And also testified. To previously. They were paying themselves. Correctly. Under the terms. Of the agreement. In the record. Are a couple pages. From their deposition. Transcript. Where they said. That they. Believe. Their payroll entries. Were correct. Based on their own interpretation. Of tour of duty. In the union contract. You can. Find that. At excerpt of record. Ninety nine. And one hundred and one. This puts the case. Squarely. Within. The Firestone case. In Firestone. The employees. Had asserted. A state law. Overtime claim. But state law. In that case. Examined. Exempted. The employees. From overtime. Where they received. Premium pay. So to hear. Washington law. Actually exempts. Truck drivers. Who are paid. The reasonable. Equivalent. Of overtime. That's why we have. A union contract. In this case. That allows for. Various different types. Of pay. Pay rates. Mileage rates. Hourly rates. Fill pay. Minimum. Time worked. And so forth. That's probably. Their. They do mention. The union contract. On a number of occasions. They also claim that. If they were. If they were terminated. Because they were exercising. Washington minimum. Wage rights. Under the state statute. But that also would be. A violation of public policy. Can that be. Segregated from. The collective bargaining. Agreement. And brought. As an independent. Claim. Not on the facts. In this record. Or the actual facts. In this case. I would agree with. The hypothetical situation. That. An employee. Covered by collective bargaining agreement. Could go into their boss. And say. Hey. The collective bargaining agreement. Says that I only get overtime. After I've worked. 50 hours a week. But state law says. I'm supposed to get overtime. After 40 hours a week. And the manager could tell them. To pound sand. And terminate him. I think we'd have a clear. Wrongful discharge. And violation of state public policy. That survives preemption. But has nothing to do. With the union. Agreement. Here it's different. For the reasons. That I stated earlier. Which is that. Determining whether even. They were paying themselves correctly. Under the collective bargaining agreement. Or whether they even had. A minimum wage act right. In the first place. Is going to depend on. Interpreting terms of the agreement. The second thing. I would. Point out to the court. Is that.    Other than two things. One. We can assume. That the employee. Has a minimum wage. Act. Right. In the first place. Is going to depend on. The employee.    And the other thing. Is that. We can assume. From the face of the complaint. That referring to. Somehow. That making these payroll entries. That they believed. Were correct. Under Washington law. Was a protected activity. And they were retaliated. For doing that. I believe. And I think. That there's going to be no case. That says. An employee's remedy. If they think they're not being paid. Their full wages. Is to reach in the till. And grab the extra cash. To take home that day. Washington law is clear. That they have a wage and hour. Action. That they'll get their attorney's fees. And that they'll even get. A double wage penalty. If they prevail. That's in fact. Exactly what. The intervening. Lawsuit. Is here. Or what I'll call. Praxair 1. That's what. The issues that were addressed. Already. In that case. So I don't think. There's. The second thing. That we have. In the record. Is the fact. That they filed. The first wage and hour. Case to begin with. But that happened. After they were terminated. There's no temporal. Connection there. That the termination. Can have to do. With the fact. That they filed the lawsuit. Because the lawsuit. Was filed. A month after. They. Were terminated. For the false payroll. Entries. Because. All of their claims. In this case. Arise under section.     Which is six months. This current. Claim. Was brought up. By the state. And the state. And the state. And the state. And the state. And the state. And then the. Statement of their claims. Which was brought up. Ten months after they received. The arbitrator's decision. Second we have. As the court is aware. There's a threshold showing to bring a section. 301. Claim. That the duty. The union. Breached its duty. Of fair representation. There's no allegation. Nor is there any evidence. The record.   The last. Subject that will turn to. Is. The settlement agreement. And release. Which we spent. Some time with. And. This is. The court's. Opposing counsel. The court can reach. That issue. Based on its. Discretion to exercise. Supplemental jurisdiction. Because it's clear. That the complaint. Has alleged straight out. Reach of the union contract. Claims that clearly arise. Under 301. If we look. At the settlement agreement. What plaintiffs want to do.     Up before. The including. But not limited to. Clause. So. The court. Has. A straight out. Reach of union contract. Claims that clearly arise. That's what. That's how they want it to be read. That's not how it reads. And that's not the agreement. That they signed. And as. The court has already pointed out. Even if there were any confusion. About. What that phrase means. And I would. Posit that there is not. It's clear. By the bold. All caps.     All claims. Which could have. Been brought. Prior to. The signing. Of the settlement agreement. And that's. Not the agreement. That they signed. And as. To the signing. Of that. Agreement. This case. Is really. About. The fact that. Mr. Atkinson. Mr. Peeler. I'm happy. That they didn't get. Any monetary. Award. In the arbitration. Yes. You had said that. In your view. The statute of limitations. Is six months. Correct. Under Del Castello. That's what the. District court. I think. Also found. Is that based on. A reference back. To a Washington statute. Since there's not. A federal. I know that. The court. Has. Also said. In other instances. That we look to. What Washington. Would apply. In decisions to. Uphold arbitrations. And I believe. That is six months. As well. I can give the. There's a. There's a Russian. Code. Seven. Four. But what I. Owe. Is a three months. And I just. I think. You'll. You'll see. Some cases. That say. We'll borrow. From. Washington state. Statute. The state. Statute of limitations. As it applies to arbitration. In some cases. That apply. The six month standard. Under Del Castello.  In. The briefs. To the district court. That three months. Or six months. Were. Passed. By the. State. Court. So. Really. The answer is there. Barbara. The statute of limitations. Whichever standard. That you're. Going to apply. Was speaking. About the. The consequences. Of the arbitration. And I know. That counsels. Brought up the point. Well. Because. The arbitrator. Found. That there was. No just cause. For termination. That somehow. Should apply. In this case. And we went. And get our money. Now. That's a collateral. Establish. Not arresting. Dakota issue. The arbitrator. Did not. Reach. The issue. Of whether or not. The payroll. Entries. Were proper. Under Washington law. The arbitrator. Applied. A very high standard. For praxair to meet. Which was. The question was. Could praxair. And did praxair. Prove. Actual. Criminal. Intent. To steal. The arbitrator. Even used the phrase. Mens rea. And used the phrase. Criminal. Conduct. That's a different. Standard. And a totally different. Issue. Than what would be relevant. In this. Case. I also would point out. That the arbitrator. As the court. Has noted. Was clearly bothered. By Mr. Atkins. And Mr. Peel's. Conduct. He made the comment. About them. Being evasive. And also said. That they should be held. Accountable. For. The payroll. Honor system. And the trust. That praxair places. In its employees. To make their payroll. Entries correct.     We have an additional. Minute. For rebuttal. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. The plaintiff's complaint. Is paragraph 15. Page. Two of the record. States. Defendants conduct. In terminating. Plaintiff. Because they sought to force. Both their union. Contract rights in the. state minimum. Wage. Rights. Is a violation of public. Policy. And is actionable as such. That's what they're. Alleging in their complaint. What they alleged in. Their complaint. I believe I heard. Counsel in argument. I would say. If we're dealing with a. Public policy. Claim. That it is not preempted. And they can go forward. With their public policy. Client. Brings us back around. To the release. And I would submit. That the release. Is set up. Limiting it. Both in the introductory. Recital.  To the wage and hour. Claims. That the actual. Operational language. Including. But not limited to. Is limited. To. The wage and hour. Claims. That the language. In the release. That specifies. That. The. Dismissal. That will be entered. In court. Is only. Of the claims. Which are a part. Of this. Lawsuit.   As a limited release. And it. Should be enforced. As such. If not. There is. Ambiguity. In the release. And that. Ambiguity. With regard. To the intent. Of the parties. The release. Is analyzed. Under Washington law. And Washington. Views the intent. Of the parties. From the context. And clearly. There is some. Ambiguity there.   That renders. Summary judgment. Inappropriate. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   Thank you. I.    Thank you.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank. You. You. Thank you.                   Thank you. Thank You. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: McKeown, Clifton, Ezra